Delaney, Judge,
concurring.
{¶ 65} I concur in Judge Hoffman’s opinion in regard to the ultimate disposition of appellant’s assignments of error. However, I concur separately as to the resolution of assignment of error IV.
*504 {¶ 66} I agree with Judge Hoffman’s conclusion in ¶ 60 that Cain’s tragic demise was not a proximate result of appellant’s status of driving under suspension. I disagree that as a matter of law, the act of driving under suspension is irrelevant to causation. Rather, I reach the same conclusion as Judge Hoffman by examining this issue under a sufficieney-of-evidence standard pursuant to Crim.R. 29.
{¶ 67} While the legislature amended R.C. 2903.04(B) to include minor-misdemeanor offenses as predicate offenses to the charge of involuntary manslaughter, the state had the burden of proving beyond a reasonable doubt that Cain’s death proximately resulted from appellant’s commission of the minor misdemeanor, which in this particular case was driving under suspension. See Jackson v. State (1920), 101 Ohio St. 152, 127 N.E. 870, paragraph one of the syllabus.
{¶ 68} “The term ‘proximate result’ was used by the General Assembly to refíne and limit the verb ‘cause’. * * * Under the statute, defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; he will be held responsible for consequences which are direct, normal, and reasonably inevitable — as opposed to extraordinary or surprising-when viewed in the light of ordinary experience. In this sense, then ‘proximate result’ bears a resemblance to the concept of ‘proximate cause’ in that defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of the risk created by his conduct. * * * Here, that means that death reasonably could be anticipated by an ordinary prudent person as likely to result under these or similar circumstances.” State v. Losey (1985) 23 Ohio App.3d 93, 95, 23 OBR 158, 491 N.E.2d 379.
{¶ 69} Upon review of the evidence adduced at trial, I conclude that the state failed to establish a sufficient nexus between appellant’s suspension and the death of Cain. When viewed in light of ordinary experience, the evidence presented in this case would not have led the average mind to conclude that a fatal consequence was within the foreseeable scope of risk created by a drivers’-license suspension. I find the reasoning of our brethren in the First Appellate District in State v. Jodrey, Hamilton App. No. C-840406, 1985 WL 6740, to be persuasive on this issue. In Jodrey, the court reversed a conviction for involuntary manslaughter under similar circumstances. The court stated:
{¶ 70} “We are not prepared to find that such an unintentional death as occurred in the matter sub judice while the appellant was under a driving suspension (that is, not legally permitted to drive such a motor vehicle as he was operating when Ackermann was killed) would naturally, logically and proximately result from the commission of driving under suspension. Moreover, the unlawful act of driving under suspension would not reasonably be anticipated by an ordinarily prudent person as likely to result in such killing as occurred here. The *505 operator license of citizens is revoked countless numbers of times daily throughout this state for innumerable traffic offenses of differing degrees of seriousness and for different periods of time, some as short as several days. When the suspension — court or administratively imposed — terminates, the driver in most cases resumes the operation of a motor vehicle without any testing. It is difficult to imagine any real difference between one’s vehicle operation skills while under suspension and immediately after the suspension is terminated. We cannot find that the driving under suspension is the proximate cause of. a death that occurs when a person drives while under suspension, as reprehensible as that activity certainly is.”
{¶ 71} While the state strenuously argues that appellant, in addition to driving with a suspended license, was drunk and using a cell phone near the time of the accident, the jury in this case specifically found that the state failed to establish beyond a reasonable doubt that appellant was committing or attempting the operation of a motor vehicle while under the influence of alcohol (additional finding as to Count two); nor was cell-phone use a proscribed act at the time of the accident. Again, it must be proven by the state beyond a reasonable doubt that the underlying unlawful act (here, suspension) was the direct and proximate cause of the death. I find that the state failed to present sufficient evidence on this issue and the involuntary manslaughter conviction must be vacated.